## CITY OF FORT WORTH, TEX. v. UNITED STATES.

No. 13065.

United States Court of Appeals
Fifth Circuit.

April 11, 1951.

R. E. Rouer, Fort Worth, Tex., for appellant.

John C. Harrington, Roger P. Marquis, Attorneys Dept. of Justice, A. Devitt Vanech, Asst. Atty. Gen., Washington, D. C., for appellee.

Before HUTCHESON, Chief Judge, and HOLMES and RUSSELL, Circuit Judges.

RUSSELL, Circuit Judge.

By this appeal the City of Fort Worth complains that the trial Court misapplied the law and rendered a patently insufficient award for the just compensation due it by the United States as the result of the condemnation of a portion of Hemphill Street and State Highway 81, lying within its city limits.

Hemphill Street, leading into Highway 81, has been for years one of the main traffic arteries entering and running through the City and muchly used by through and local traffic. It and Highway 81 form one of the main outlets from and means of entrance into the City for a heavy volume of traffic from the South. The United States Government, on land acquired by private purchase, erected the Fort Worth Quartermaster Depot of the United States Army on a rectangular tract running North and South, East of Highway 81 and extending Eastward to the right-of-way of the MK&T Railroad, and subsequently acquired by condemnation a larger tract of land on the West side of said Highway for quartermaster depot purposes. The boundary as thus enlarged constituted a parallelogram approximately one mile wide extending across Hemphill Street (at the point where it then opened into Highway 81), and the highway. Shortly after the beginning of World War II, as a matter of safety and in furtherance of the national defense, the Army and municipal and State Highway authorities agreed that the highway through the quartermaster depot area should be closed. This was a temporary arrangement, but the highway has been kept closed continuously, and after the termination of actual hostilities, the Government proceeded to condemn the highway in the cause from which this appeal arises. At the time the highway was originally closed, and thus the entrance into Hemphill Street likewise rendered useless for through traffic, the Northern boundary of the depot area was approximately along the then city limits of Fort Worth, but thereafter, and prior to the institution of the condemnation proceeding, the city limits were extended beyond the Southern boundary of the depot. It is unnecessary to detail the location of streets and highways adjacent to the quartermaster depot area except to remark that prior to its closing the highway had been largely used by traffic approaching and leaving the city by means of a county road known as Crowley road and to further

state that seven blocks North of the depot area there was what is known as Kellis Street which crossed Hemphill Street and proceeded at a grade crossing with the MK&T Railroad to what is known as Highway 81A which ran roughly parallel with Highway 81 but to a junction with it South of the depot area. This highway was not completely improved and was actually upon what is known as Pecan Street. On Highway 81, at a point South of the depot area, there was an underpass under the MK&T Railroad having a cleared opening of forty feet in width, and this underpass furnished a means of travel along Highway 81 for traffic into the city without delay and danger of a grade crossing prior to the closing of such highway. This underpass was within the city limits as extended. At the time James Street, running along the West boundary of the depot area was already in existence, and after the closing of Highway 81 it was used as a substitute route for what we denominate the Crowley Road traffic which had been diverted from Highway 81 by the closing. There is no genuine dispute as to the facts, and this broad outline of the situation is presented only to give some factual background which might assist in understanding and determination of the legal question involved, as well as to afford some explanation of references to streets and highways hereinafter to be made.

The facts were fully and fairly found by the trial Court, and the substantial question now presented for our determination in adjudging the propriety of the award made by that court is whether he accepted and applied the proper rules of law in order to award the City just compensation under the circumstances.

The issues presented by the parties were sharply defined. On behalf of the Government, it was contended and strenuously urged (as it is now before us), that as the result of improvements already made by the Government in 1942, at the time the highway was informally and temporarily closed, at an expense of some sixty-eight thousand dollars, the United States had already provided adequate substitute facilities, that is, the route turning off Hemphill Street at Kellis Street proceeding Eastwardly by a grade crossing across the railroad, thence to a point where a connection had been built between Kellis Street and South Pecan Street (a distance of approximately seven blocks), and thence proceeding by South Pecan Street (which the Government at that time had widened from twenty to twenty-four feet), to the junction of that street with Highway 81. As to the Crowley Road traffic, it was the contention that adequate substitute facilities were available by streets already in existence running East and West between James Street and Hemphill Street. The position thus taken, especially illustrated by the contention with reference to the Crowley Road traffic, is based fundamentally upon the legal proposition asserted that if there are adjacent facilities which can in some fashion carry the total traffic, the Government is not obligated to provide any additional facilities, since such are not "necessary." As to the far greater proportion of Hemphill Street traffic which travels Eastwardly therefrom, this fundamental issue is modified by reliance upon the improvements already afforded by the Government which it is urged gave the city "necessary" substitute facilities. Vigorously contesting the legal position of the United States, the City contends that it was entitled to an award of compensation sufficient in amount to enable it to provide substitute routes which will restore the traffic facilities of the city to a state of utility equal to that existing before the condemnation, as far as reasonably possible. Much stress is laid upon the value for traffic handling purposes of the underpass South of the depot boundary on Highway 81, as well as the loss of seven blocks of Hemphill Street between Kellis Street and Felix Street, which runs along the North boundary of the depot area. It was also contended that it is necessary, if the city is to have compensation necessary to restore comparable traffic facilities, that an award be made in an amount sufficient to provide for the improvement of a road from James Street to Hemphill Street which should be graveled, as was Crowley Road,

in order to give access to Hemphill Street at the first possible location beyond the depot. As concerns the major feature of its claim for substitute facilities, the city contended that this could be no less than improvement of Felix Street Easterly across the railroad tracks, with provision for an overpass to take the place of the underpass rendered useless for such traffic by the condemnation of the highway, and proceeding from a point across the railroad by the shortest distance to the South to join Highway 81. This in effect would provide the nearest possible exact location as a substitute for that segment of Highway 81 taken by condemnation. It is urged that even with such compensation and improvement the city would not have its traffic facilities restored to the condition existing at the time of the taking because it would nevertheless lose a straight and direct route theretofore existing via Highway 81, and James Street would be subjected to an additional traffic load for the distance from the Crowley Road along the Western boundary to the depot area to the point of divergence to Hemphill Street.

In attempting to establish the just compensation to which it was entitled, predicated upon the cost of any necessary substitute facilities, the city confined its evidence to what we will denominate the Felix Street substitute which was estimated to cost $756,396.02, and the cost of the Crowley Road substitute along Fuller Avenue and Felix Street at a cost estimated to be $30,502.00.

The trial Judge did not accept wholly either the contentions of the United States or of the City. He called for evidence of the cost of making specified improvements on Kellis Street, and finding that with such improvements this route would constitute an adequate, reasonable and practical substitute for the closing of Hemphill Street and Highway 81 (which is but a projection of the Street), awarded the City the sum estimated to be the cost of the improvements considered necessary. He expressly made no award to care for the Crowley Road traffic diverted, and as to this accepted the contention of the United States that East-West streets already available were sufficient to care for such traffic as might be diverted from James Street to Hemphill Street.

■ Since the question of just compensation, or what is necessary to provide a substitute facility, is one of fact for judicial determination, there could be little ground for questioning the Court's finding were it not for the reliance which the Court apparently placed upon the presence of an expressway, constructed by the City, State and Federal Government, as an adequate facility at the time to handle all of the traffic, and his further apparent reliance upon the use of that part of Pecan Street now designated as Highway No. 81A, likewise already in existence. From these findings, it can be reasonably urged that in determining the adequacy of the substitute route made necessary by the condemnation, the trial Court relied upon the reasonableness of the facility available to in some fashion handle the total traffic, rather than upon the obligation of the Government itself to furnish substitute facilities which would leave the City's traffic system as ample and as near of equivalent sufficiency as reasonably practical, to that which would have existed had Hemphill Street not been closed. To state the matter in a different form, as contended by the City, the expressway and Pecan Street had been planned and constructed as an independent project to provide *additional* means of traffic convenience along with Highway 81, and therefore consideration of the availability of these facilities is not proper in determining the loss to the City's traffic system occasioned by the closing of Hemphill Street. That the Court did so view the matter, and award accordingly, is strongly supported by the finding and failure to award with reference to the Crowley Road traffic, for as to this the Court expressly predicated his failure to find any compensation due upon the existence of the City streets, with which the Government was in no wise concerned.

■ It is evident that in making a determination of the question of just compensation to a municipality when a segment

of an important and muchly used traffic artery is condemned, due consideration must be given to the obligation of a municipality to provide necessary traffic facilities, and, where applicable under circumstances properly shown by evidence, the well known need for constantly expanding and increased facilities arising from the constantly increasing volume of vehicular traffic. In short, proper consideration must be given to the unquestioned fact that any well planned and constructed through street or traffic artery is a valuable aid to a municipality in discharging its obligation to keep traffic facilities abreast as nearly as possible with increasing demands. These considerations, where the traffic need is shown by evidence, as in this case, require rejection of the idea that the mere fact that other and additional traffic facilities, planned and constructed as necessary in addition to, and even in conjunction with another such facility, now closed by condemnation, to provide for handling the entire traffic load, can not properly be denominated an adequate substitute merely because it will carry, but in crowded fashion, the traffic so diverted, when, as shown by the evidence here, it is clear that the diverted traffic adds to the sum total of the traffic, and that if the traffic artery so closed were opened, it would result in a diminishment of traffic on such independently constructed facility. In other words, the fact that the expressway now being constructed and Pecan Street, already in existence, presently carry the traffic, though not in as free a manner as if the condemned segment of Highway 81 were open, as shown by the evidence, does not constitute a conclusive showing that they are adequate substitute facilities for the highway closed. The true test is not whether the substitute facilities already in existence will carry the traffic, diverted and non-diverted, but rather what compensation is necessary to enable the City to provide a facility which will carry the entire traffic load in an equally adequate manner as would have been true had there been no condemnation. In case of facilities constructed as additions to the facilities condemned, this might be computed from evidence of those informed upon the subject of an amount necessary for additions or betterments of such facilities which would result in its capacity to handle the diverted traffic along with that which would anyhow use the independent facility and with equal traffic convenience. Thus in the present case, but without attempting to express any particular feature which should influence the trial Court, it might be that an adequate substitute would be the improvement of South Pecan Street to an extent necessary to care for the increased traffic diverted by reason of the closing of Highway 81, to the same extent of adequacy as would have been true without the diversion. Likewise the Court might find upon a proper showing that there was no necessity to construct an overpass, if by such expenditure on Pecan Street or on other existing streets there might be provided facilities adequate to carry the proportion of the traffic diverted which would otherwise use the underpass, to some underpass or overpass which the City might already have or plan to construct. We wish to make clear that we enforce no strict rule that just compensation requires that the condemnee be awarded an amount sufficient to provide for the construction of the physically nearest parallel construction for the Court might find that under the circumstances construction or structures equal to that taken were not necessary to provide the City equivalent means of traffic control which was afforded by the facility condemned. Neither do we intimate what should be the findings of the trial Court. What we hold is that the City is entitled to an award sufficient to provide such traffic facilities as are necessary to restore its entire adjacent system of such facilities to the same status of utility as was enjoyed prior to the taking. In this determination nearby facilities are entitled to no weight other than such as may be proper to determine the extent to which their presence would withdraw traffic from the condemned highway even if it was still in use, or to the extent that

by improvement or betterment they might properly be made to provide adequate substitute facilities.

▉ The general rule of compensation in such cases is well established. Shortly stated, it is that in such a case the City is entitled to compensation sufficient in amount to enable it to provide necessary substitute facilities. Based upon language in United States v. City of New York, 2 Cir., 168 F.2d 387, 389, counsel for the United States urges a strict view of the "necessity" of the situation, though the rule there announced and supported by numerous citations of authority that "The true measure of compensation when a municipality's streets are condemned is the cost of providing any necessary substitutes," is not questioned. Reliance is confidently placed upon the following language of the opinion that "When no substitute facilities are necessary, it follows that no compensation is allowed. The rationale is clear. If the municipality has not had to provide substitutes, then it has suffered no financial loss and hence is not entitled to substantial damages. Indeed, the taking relieves it of the burden of maintaining such roads. It is in the business not of making profits, but of supplying public needs; and neither original cost nor reproduction cost of a street affords any real measure of the City's burden in taking care of these needs when a relocation of facilities becomes necessary. A reference to the recent cases demonstrates the quite universal acceptance of the rule thus applied below." The Court then cites numerous cases upholding the principle enunciated. The quotation relied upon recognizes the obligation to furnish necessary substitute facilities. However, it will not at all do to say that in determining the cost of providing any necessary substitutes, an award in condemnation may be denied because there are already in existence other available routes which will in some fashion handle the traffic diverted by the condemnation. In the case referred to it would appear from a consideration of the opinion and the report of the case in the trial Court that the portion of the streets and bridge involved were at the terminii of such streets

and thus the situation was manifestly different from that where a segment of a through street and highway is taken. In that case there would be a situation similar to those instances where a large area was condemned and no compensation was awarded for roads originating and ending within the area. United States v. Des Moines County, Iowa, 8 Cir., 148 F.2d 448, 160 A.L.R. 953. This is doubtless what the Court had in mind in making its statement that in the absence of necessity for providing substitutes, the municipality has suffered no financial loss. In any event, as is clearly shown by United States v. Des Moines County, supra; Jefferson County, Etc., v. Tennessee Valley Authority, 6 Cir., 146 F.2d 564; United States v. Los Angeles County, 9 Cir., 163 F.2d 124, and other cases which could be cited, the rule universally enforced in such an instance recognizes the existence of the duty of a municipality to provide for a necessary readjustment of its traffic facilities, and that the amount of compensation proper in such a case is the cost of constructing necessary substitute facilities in order to replace and rearrange its traffic arteries. In broad outline, the property taken is a part of the City's traffic system which it is under the duty to replace if necessary. In any proper view of the requirements of just compensation, the substitute "necessary" is that necessary to readjust its street and highway system to serve the municipality's requirements and needs in as adequate a manner and extent and with equal utility as such system would have provided had the facility in question not been condemned, so far as this is reasonably practical. United States v. Los Angeles County, supra, 163 F.2d 124. What means are necessary to reach this result, and the cost thereof, will of course vary according to the circumstances of each case, and we leave this primarily to the trial Court, but no application of the rule of necessity which is restricted only to whether there is, or can be made, some arrangement whereby traffic *can* be handled, without due consideration of the benefits which would be derived by such handling if the condemnation had not been had,

can in the very nature of the thing afford compliance with the primary requirement of just compensation.

The Government contends that the substitute facility need be only reasonably adequate or, predicated upon the case of United States v. Wheeler TP, 8 Cir., 66 F.2d 977, need only be "reasonably passable." This contention entirely overlooks the facts that in that case the Court was dealing with a State law which required the authorities to maintain and keep the roads "reasonably passable." This case is no authority for the position taken, except that by analogy it supports a holding that the condemnor must compensate a municipality in an amount sufficient to enable it to comply with its obligation to keep available necessary traffic facilities. In the present case it was found by the trial Court that there was a need for Highway 81 and Hemphill Street in the traffic system of the City of Fort Worth, and that but for the closing, it would yet be substantially used.

It is true that there may, and probably will, exist some difficulty in dealing with such a subject in an endeavor to provide compensation sufficient to restore the municipality to its equivalent position prior to condemnation. While we are not expert in such matters, we must recognize that traffic engineering has become more or less of a science necessary in the plan and construction of streets and roads. It appears in this record that matters such as traffic counts and direction and destination of travel can, after observation for sufficient time, be estimated with accuracy so far as future needs are concerned. It would not appear extremely difficult for the Court after hearing evidence available and material on such questions, to make a determination fair and just to both parties in an amount necessary to restore a municipal traffic system as near as reasonably

possible and practical to its former state of utility. This may or may not require duplicate reproduction as near as possible, or the restoration of each feature or form of the facility taken. In view of the nature of the subject-matter condemned and the end to be attained, original cost or reproduction costs are not proper to be considered. The cost of adequate substitute facilities to be so computed, is proper whether such sum be more or less than the value of the street and facilities taken. U. S. v. Los Angeles County, supra. We think the true rule in such cases is well stated in Jefferson County v. Tennessee Valley Authority, supra, 146 F.2d 564, 565, that "The practical view is to consider the road and highway needs of the civil division affected by the taking and to allow the governmental unit such sum in damages as will pay the cost of road facilities equal * * * to those destroyed. * * * The constitutional phrase 'just compensation' means a full and perfect equivalent for the property taken. Monongahela Navigation Co. v. United States, 148 U.S. 312, 326, 13 S.Ct. 622, 37 L.Ed. 463. Just compensation rests on equitable principles and means substantially that the owner should be put in as good position as he would have been if his property had not been taken or as nearly so as is possible under the given circumstances."

We conclude that the ends of justice require that another trial of this case be had upon which the principles herein announced may be applied by the trial Court in determining the question of just compensation to which the city of Fort Worth is entitled.

The judgment of the trial Court is reversed and the cause remanded for further proceedings consistent with the views herein expressed.

Reversed and remanded.