531 F.2d 882
 UNITED STATES of America, Appellee,
v.
STREETS, ALLEYS AND PUBLIC WAYS IN the VILLAGE OF
STOUTSVILLE, Missouri, situate IN MONROE COUNTY,
MISSOURI, and William A. Moutray, Mayor,
et al., Appellants.
 No. 75--1395.
 United States Court of Appeals,
Eighth Circuit.
 Submitted Jan. 13, 1976.
Decided Feb. 23, 1976.
 
 Jerome W. Seigfreid, Edwards, Seigfreid, Runge & Hodge, Inc., Mexico, Mo., made argument for appellants. Rebuttal was made by Mr. Seigfreid. He also filed agreed statement on appeal and brief for appellant.
 Kathryn A. Oberly, Atty., Dept. of Justice, Washington, D.C., made argument for appellee. Her name also appeared on brief filed for the United States. Other counsel appearing on the brief were: Wallace H. Johnson, Asst. Atty. Gen., George R. Hyde, Atty., Dept. of Justice, Washington, D.C., and Donald J. Stohr, U.S. Atty., and Edwin B. Brezezinski, Asst. U.S. Atty., St. Louis, Mo.
 Before GIBSON, Chief Judge, CLARK, Associate Justice, Retired,* and BRIGHT, Circuit Judge.
 GIBSON, Chief Judge.
 
 
 1
 In this interlocutory appeal,[1] the Trustees of the Village of Stoutsville in Monroe County, Missouri (the Trustees), question the compensatory adequacy of an order of the District Court[2] conditionally approving a plan of the United States to construct limited substitute road facilities to compensate the Village in kind, rather than monetarily, for taking by condemnation approximately 1.6 miles of gravel streets and 0.62 miles of public alleys and accompanying sidewalks in connection with the Clarence Cannon Dam and Reservoir Project in northeast Missouri, which is scheduled to inundate approximately 80 percent of the Village. The Trustees seek additional monetary compensation to construct new streets and alleys in an adjoining plot of high ground newly annexed by the Village in 1971 shortly before the condemnation.
 
 
 2
 The Trustees acknowledge the validity of the 'substitute facilities' doctrine of compensation for the federal taking of local public facilities, but question its application to the instant facts and the court's finding that for the present no streets and alleys in addition to those planned by the United States are reasonably necessary.[3] We affirm the District Court's approval of the United States' plan based upon the implicit finding that the Village has not proved any reasonable necessity for the additional facilities.
 
 
 3
 The citizens of Stoutsville have lived for nearly a decade under the threat of condemnation in connection with the proposed reservoir. Following congressional approval, the project was instituted by the United States Army Corps of Engineers in 1967. Acquisition of private land in and around the Village began soon thereafter. Formal condemnation proceedings were instituted by the United States against the Village in November, 1972. All businesses have moved out of the Village and its population has dwindled from a high of 130 persons at some time in its prior 100-year history down to approximately 30 at the time of the condemnation.[4] The land for the streets, alleys and sidewalks of the Village was dedicated to public use by private owners at various times since 1871 through grants of public easements, with the owners of the abutting properties retaining reversionary interests, now owned by the United States. On November 29, 1972, the United States was awarded title to approximately 80 percent of the Village, including the streets, alleys and sidewalks, and on May 31, 1974, obtained additional stretches of right of way in and around the Village for the planned substitute roads proposed by the United States as substitute facilities.
 
 
 4
 Under the plan the United States will construct a concrete intersection, one block of gravel street (approximately 300 feet long) and a quarter of a mile of gravel road to provide access to certain areas in and around the remaining part of the Village not being condemned. Access to these areas has previously been through the condemned land scheduled to be flooded by the reservoir. The plan will thus provide access from the Village to the Stoutsville Public Cemetery and County Roads 603 and 464 located south of the Village, U.S. Highway 24 to the north, and State Highway 107 to the northeast. The cost of constructing the planned roads is projected to be approximately $112,100. The District Court approved the plan on March 31, 1975.
 
 
 5
 The Trustees are in accord that just compensation under the Fifth Amendment for a federal taking of public streets of a local community by eminent domain may be supplied by providing 'substitute facilities.' 4A Nichols on Eminent Domain § 15.2 (3d ed. 1975). Under the 'substitute facilities' doctrine, developed by the courts since Brown v. United States, 263 U.S. 78, 44 S.Ct. 92, 68 L.Ed. 171 (1923) (dictum), the compensation due a local community for a taking of public facilities is the cost of supplying whatever substitute facilities are reasonably necessary to enable it to serve its constituents in as adequate a manner as it would had the condemnation not occurred. City of Fort Worth v. United States, 188 F.2d 217, 222 (5th Cir. 1951); United States v. Arkansas, 164 F.2d 943 (8th Cir. 1947). Use of this principle in place of the conventional fair market value concept of determining compensation relieves public condemnees of hardships they would otherwise face due to the absence of a market for streets and similar public facilities. United States v. Certain Property, 403 F.2d 800, 802--03 (2d Cir. 1968). And if it is necessary to provide substitute roads to replace and utilize the uncondemned portion of the viable entity, the federal government, as condemnor, should construct or supply the cost of constructing the necessary substitute roads, regardless of whether that cost be greater or less than the value of the roads taken. United States v. Des Moines County, 148 F.2d 448 (8th Cir.), cert. denied, 326 U.S. 743, 66 S.Ct. 56, 90 L.Ed. 444 (1945).
 
 
 6
 By the same token, however, the federal government as condemnor enjoys the corresponding mitigating principle that it must furnish only substitute facilities that are reasonably necessary in the circumstances. Washington v. United States, 214 F.2d 33, 40 (9th Cir.), cert. denied,348 U.S. 862, 75 S.Ct. 86, 99 L.Ed. 679 (1954); United States v. Des Moines County, supra. If none are reasonably necessary, no compensation is allowed. United States v. City of New York, 168 F.2d 387, 389 (2d Cir. 1948). Thus, if a decrease in population has relieved the municipality of the burden of providing as many streets, it has suffered a correspondingly reduced loss by condemnation and is entitled to only as much compensation as is reasonably necessary to meet its present needs.
 
 
 7
 Specifically, the Trustees feel they have the right to provide for the reasonable future expansion of the Village and that the Government should provide additional compensation to finance the proposed additional streets in the newly annexed, sparsely inhabited area of the Village in which a new post office and two churches have now been relocated.[5] They further contend that a court is not competent to determine what substitute facilities are necessary in a community; only they as a part of the legislative branch of local government have the power to make that determination. Or, in other words, in order to make the local government whole for the loss suffered, the United States must provide whatever facilities the Trustees deem necessary. The only limitation conceded by the Trustees to temper this purported legislative choice is that the facilities must at least be intended to serve a 'rational governmental purpose.'
 
 
 8
 The United States contends, and we agree, that the determination of reasonable necessity to provide replacements for public facilities taken by federal condemnation depends upon the circumstances of each case. We reject the Trustees' contention that the need can only be determined by the state or local officials who are obliged to build and maintain the public facilities. In the final analysis, the determination depends not upon what the local officials wish to build, but upon what facilities they have a legal or factual obligation to provide for their constituents. United States v. Certain Land, 346 F.2d 690, 695 (2d Cir. 1965); Washington v. United States, supra at 40; United States v. Des Moines County, supra at 449. Determining the presence or absence of necessity for public facilities in this context is simply one aspect of the broader assessment of just compensation that has long been recognized as a judicial function, United States v. New River Collieries, 262 U.S. 341, 343--44, 43 S.Ct. 565, 566--67, 67 L.Ed. 1014, 1017 (1923); and in federal condemnation cases, federal, not state, law applies. United States v. Miller, 317 U.S. 369, 379--80, 63 S.Ct. 276, 282--83, 87 L.Ed. 336, 345--46 (1943); Nebraska v. United States, 164 F.2d 866, 867 (8th Cir. 1947), cert. denied, 334 U.S. 815, 68 S.Ct. 1070, 92 L.Ed. 1745 (1948).
 
 
 9
 Thus, the determination of reasonable necessity for substitute public facilities to replace those federally condemned is a matter for the judicial trier of fact. Washington v. United States, supra at 44; City of Fort Worth v. United States, 188 F.2d 217, 222 (5th Cir. 1951); United States v. Los Angeles County, 163 F.2d 124 (9th Cir. 1947); see Franklin County v. United States, 341 F.2d 106 (5th Cir. 1965); Town of Clarksville v. United States, 198 F.2d 238, 242 (4th Cir. 1952), cert. denied, 344 U.S. 927, 73 S.Ct. 495, 97 L.Ed. 714 (1953). The burden of proving the existence of reasonable necessity lies with the local government. See United States v. Certain Property, 403 F.2d 800, 803 (2d Cir. 1968); Note, 1975 Duke L.J. 1133, 1138. We believe the District Court properly applied these principles in the instant case and correctly found as a matter of fact that no reasonable necessity presently exists for the Trustees to construct additional streets in the newly annexed portion of the Village. Indeed, the Trustees in oral argument before this court conceded that the plan of the United States will probably be adequate to serve the needs of a population of 30 persons. In view of this concession, their contention that the United States to make them whole must furnish an equal number of streets as those being condemned is without merit.[6]
 
 
 10
 Finally, the Trustees contend that the court erred in failing to take into account the reasonable likelihood that a substantial number of new streets will be required to accommodate the influx of visitors expected in the area when the reservoir is completed. The United States estimates that 3,880,000 persons annually will visit the project by the fifth year of its operation. The Trustees argue that to ignore the reasonable future needs of the Village by determining necessity with reference only to the present, greatly diminished, population enables the United States as condemnor to take advantage of the depreciation of the town's population (and associated property values of its public facilities) attributable to the project itself.[7]
 
 
 11
 The District Court rejected this argument, reasoning that a local government is organized to meet its citizens' needs for governmental services, not to make a profit, and that removal of the bulk of the Village population in the instant case correspondingly decreased the Trustees' obligation to provide streets and other public facilities. Now, the Trustees must provide streets and access ways only for those few persons who remain, and the United States must merely compensate the Trustees to enable them to meet their obligation. This proceeding does not concern compensation for loss of the 'community.' The Government as condemnor either has already provided or will provide full compensation for the land taken from private owners, which includes the reversionary interest in the land occupied by the streets and alleys. This proceeding merely concerns the Village's loss of the public easements for the condemned streets and whatever improvements had been placed thereon. Compensation for taking the private property of citizens who departed, as well as of those who remain, is not at issue here.
 
 
 12
 Just compensation is traditionally determined as of the date of taking, not some future date. United States v. Miller, supra, 317 U.S. at 374, 63 S.Ct. at 280, 87 L.Ed. at 343; Washington v. United States, supra at 45. Thus, the United States need not now finance unnecessary public streets although a need for the same may develop in the future. The District Court properly refused to speculate on possible future increases in Stoutsville's population. If the population does increase in the future, expanding the Village's need for streets, the increase will be accompanied by growth in the Village's tax base. The corresponding increase in revenue from taxes and other available sources will serve to finance the Village's growing public needs, as is true with any expanding community. In the instant case, the United States is only obliged to compensate the Village for its present loss caused by the condemnation; and this is done by providing substitute facilities.
 
 
 13
 The Trustees are free to return to the District Court to litigate the adequacy of the plan to furnish necessary substitute facilities. Further compensation will be merited only if the Trustees can prove that additional Village facilities are reasonably necessary to serve the remaining population of the utilized land area in the Village at the time of the condemnation.
 
 
 14
 The judgment of the District Court is affirmed.
 
 
 
 *
 The Honorable Tom C. Clark, Associate Justice, Retired, United States Supreme Court, sitting by designation
 
 
 [1]
 The appeal was permitted by this court pursuant to 28 U.S.C. § 1292(b) (1970). The District Court certified nunc pro tunc that the order appealed from involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal may materially advance the ultimate termination of the litigation. See United States v. 564.54 Acres of Land, 506 F.2d 796, 798 (3d Cir. 1974). The certification was entered pursuant to our sua sponte partial remand of January 14, 1976, in which we otherwise retained jurisdiction
 
 
 [2]
 The Honorable John F. Nangle, United States District Judge for the Eastern District of Missouri
 
 
 [3]
 The plan was approved by the District Court in an interlocutory order and opinion reported as United States v. Streets, Alleys & Public Ways, 396 F.Supp. 509 (E.D.Mo.1975). However, as the Trustees in the district court limited their defense to the legal issue of the court's interpretation of the substitute facilities doctrine, without 'specifically assert(ing) that the plan of providing substitute facilities * * * does not constitute adequate substitution of necessary roadway facilities,' the court retained jurisdiction to give the Village the option of litigating the plan's adequacy at a later date. The United States was ordered to report on implementation of the plan at four month intervals until completion
 
 
 [4]
 The precise population of the Village at the time of condemnation in November, 1972, is in dispute. The District Court entered no finding as to the number of people then living in the Village, stating only that the '(d) efendants (Trustees) argue that Stoutsville lost most of its population (and thereby its present need for reconstruction of all of the roadways taken) as a result of the dam and reservoir project, and that the city plans to redevelop (and thereby develop a need for more roadways in the future).' The parties' Agreed Statement on Appeal filed in July, 1975, pursuant to Fed.R.App.P. 10(d), states that 'the Village now has a population of approximately 30.'
 
 
 [5]
 The United States notes that much of the land annexed by the Village in 1971 upon which new streets are desired is owned by certain of the Trustees individually
 
 
 [6]
 The case of Brown v. United States, 263 U.S. 78, 44 S.Ct. 92, 68 L.Ed. 171 (1923) upon which the Trustees rely in support of this contention, is inapposite. There, Congress specifically appropriated funds to replace a town that was scheduled to be largely condemned to make way for a federal project. Brown does not provide authority for the unlimited 'one for one' style of substitution proposed by the Trustees, nor have the cases since Brown applied the doctrine in so broad a manner
 
 
 [7]
 The Trustees' reliance on Almota Farmers Elevator & Warehouse Co. v. United States, 409 U.S. 470, 93 S.Ct. 791, 35 L.Ed.2d 1 (1973), in support of this argument is misplaced. That case involved a condemnation by the United States of private property, not public, and applied the conventional market value concept, granting the condemnee 'the full monetary equivalent of the property taken.' Id. at 473, 93 S.Ct. at 794, 35 L.Ed.2d at 7. The instant case involves an alternative method of compensation that entirely replaces the market value concept where public facilities are concerned
 Moreover, the principle that neither party may take advantage of an alteration in the market value of the property attributable to the project itself has no neat application in the instant context. The substitute facilities measure of compensation is used by the courts regardless of whether it produces an award greater or less than the 'value' of the property, so long as the substitute facility is reasonably necessary to meet the needs of the community that had been met by the condemned property. City of Fort Worth v. United States, 188 F.2d 217, 223 (5th Cir. 1951); United States v. Des Moines County, 148 F.2d 448 (8th Cir.), cert. denied, 326 U.S. 743, 66 S.Ct. 56, 90 L.Ed. 444 (1945). Further, if the needs of the community are assessed with reference to the population reasonably likely to remain in the community (determined as of the time of the taking), no hardship will fall on the Village. Thus, if the Trustees choose later in these proceedings to challenge the adequacy of the United States' plan to meet those needs, the District Court's findings should focus on the Village's needs based upon its population at the time of taking.