**UNITED STATES of America, Plaintiff,**

v.

**Joseph RAGUSA, Defendant.** ·

**No. 80–00051–01–CR–W–6.**

United States District Court,
W. D. Missouri, W. D.

Aug. 7, 1981.

Robert Beaird, Kansas City, Mo., for plaintiff.

Ronald S. Reed, Jr., U. S. Atty., Sheryle L. Jeans, U. S. Dept. of Justice, Kansas City, Mo., for defendant.

MEMORANDUM AND ORDER DISMISSING CONTEMPT PROCEEDING AND ENTERING ORDER NUNC PRO TUNC REESTABLISHING CONDITIONS OF RELEASE

SACHS, District Judge.

Defendant Ragusa is at liberty pursuant to leave of Court pending the appeal of his conviction of a federal offense in the nature of attempted arson. On January 5, 1981 the Court imposed a maximum sentence of ten years, subject to reduction after a study to be conducted upon affirmance of the conviction. The government (Strike Force) filed on July 10, 1981, a motion for order to compel defendant Ragusa to show cause why his bail should not be revoked, asserting violation of a condition of release that he "not knowingly associate with any person who has been convicted of a felony." The government has filed extensive documentation tending to show that on January 6, 7, 8 and 9, 1981, and on additional occasions in February through May, 1981, defendant Ragusa did associate with some nine persons with felony convictions. An extensive collection of newspaper clippings was also filed, at the Court's suggestion, tending to establish the notoriety of the convictions, so that it may be reasonably concluded that defendant knew he was associating with felons.

The facts do not appear to be in serious controversy. The major question presented by defendant, in his responsive filing of July 27, 1981, is whether the condition of release as asserted by the government legally exists pending appeal, in that (1) there is no limitation on associations in defendant's bond and (2) any orally imposed condition of release pending appeal is said to be a nullity, under the requirement of Rule 9(b), Federal Rules of Appellate Procedure, that "if the district court . . . imposes conditions of release, the court shall state in writing the reasons for the action taken . . ." Defendant asserts a "logical" inference that

simply because there were no written *reasons* it should follow that "such conditions were never imposed." Defendant further asserts that the Court should have made inquiry in connection with the appeal "to see if conditions of release should be imposed" and that "no such inquiry was even conducted in this case."

A review of the transcript of the sentencing hearing shows that I simply declared that I would "make no change in bonding requirements at this time" and also confirmed a clarifying inquiry by defendant's counsel that "no additional bond will be required and the same bond and under the same conditions will remain in effect for the purposes of appeal." Sentencing transcript, January 5, 1981, page 18. At the conclusion of trial I stated "defendants will remain at liberty on their present bonds, subject to the conditions of the appearance bonds in this case." Proceedings, October 24, 1980.

Three questions must be resolved: (1) Is defendant subject to no associational limitation pending appeal because the Court did not make a post-conviction *written* entry on that subject? (2) Is defendant subject to no associational limitation pending appeal because the Court's oral directive at sentencing was ambiguous and did not fairly advise defendant of the requirement? (3) If the prohibition survives, can it be inferred that defendant willfully violated it?[1]

The ultimate issue before the Court is the existence of criminal contempt. The associational limitation is not a condition of the *bond*, and the bond cannot be forfeited for violation of a nonexistent condition. Compare *Brown v. United States*, 410 F.2d 212 (5th Cir. 1969) cert. den. 396 U.S. 932, 90 S.Ct. 272, 24 L.Ed.2d 230, in which there was a forfeiture of the net sum of $5000 for violation of travel restrictions contained in the bond. The Court's memorandum and order of July 22, 1981, gave notice of a criminal contempt proceeding, under 18

U.S.C. § 401(3), and was issued pursuant to Rule 42(b), F.R.Crim.Proc. A bench trial was scheduled because I ruled that "the charges, if proven, would not appear to justify punishment in excess of commitment for a period of six months and a fine not to exceed $500. *Richmond Black Police Officers v. City of Richmond*, 548 F.2d 123, 127–8 (4th Cir. 1977)."

**I.**

## NO REQUIREMENT OF NEW WRITTEN CONDITIONS OF RELEASE PENDING APPEAL

■ In accordance with normal practice in this Court and apparently elsewhere, the defendant's initial release prior to trial was pursuant to (1) a bond, containing certain limited requirements pertaining to travel and court appearances, and (2) an order establishing detailed conditions of release, signed by defendant and by the magistrate, and including the prohibition against associating with known felons. See Bail Reform Act Form No. 2, "Order Specifying Methods and Conditions of Release," "Restrictions on Travel, Associations or Place of Abode." At the time of conviction, the Court orally released defendant on the same *bond* conditions. While the failure to refer to the conditions of release was inadvertent, there was clearly no reference to such conditions.

At the time of sentencing, the government orally requested an increased bond, and I responded that there would be no change. I also confirmed defendant's counsel's clarifying question as to whether "the same bond and under the same conditions will remain in effect for the purposes of appeal." My intention to maintain the status quo, as desired by defendant, was not reduced to writing.

Defendant has alleged an inconsistency between common practice and Rule 9(b) of the appellate rules. The Rule appears to

---

1. I note for the record that the question of ambiguity was raised sua sponte by the Court, and further note that there is no question as to my intentions at the time of sentencing—I intended pre-trial restraints and securities to con-

tinue. On review of the transcript I was troubled, however, that my wording may have been too imprecise to warrant a finding of criminal contempt.

contemplate an "application" by a defendant regarding bonding on appeal. If the application is denied, so that a defendant is to be confined during the appeal, or if the court imposes conditions, the *reasons* for the court's actions are supposed to be in writing.

The apparent purpose of Rule 9(b) is to make a satisfactory record for appellate review of a decision *adverse to the defendant.* A literal reading of the Rule would not require the Court's directions to a defendant, setting forth conditions, to be in writing, but would obligate the Court to set forth in writing its *reasons* for imposing contested conditions. The rule seems to refer to new conditions or at least to conditions resisted by a defendant, similar in nature to the denial of bail. Thus the requirements of the Rule for a written explanation are rarely called into play.

Apart from the reasonable construction of Rule 9(b), which seems adverse to defendant, a body of appellate authority rejects the literal requirement of written reasons contained in Rule 9(b), when there is a transcript of statements from the bench which is adequate for appellate review. *United States v. Manarite,* 430 F.2d 656, 657 (2d Cir. 1970) (". . . an opinion stated on the record of the bail hearing is sufficient compliance with the requirement of a written opinion . . ."); *United States v. Fields,* 466 F.2d 119, 121 n. 3 (2d Cir. 1972); *United States v. Provenzano,* 605 F.2d 85, 88 n. 5 (3rd Cir. 1979).

A reconsideration of the events connected with sentencing does suggest that a more precise statement from the bench would have been desirable in this case. Mere filing of a written order does not, however, seem to be required practice or even good practice. This aspect of defendant's challenge is therefore rejected.[2]

---

2. A statement of reasons for retaining the restriction on association may be somewhat beside the point at this time, but the Court will state that the pre-trial restrictions should doubtless be continued, as an additional safeguard against temptation to violate the law pending appeal. Danger to the community be-ing an express consideration in determining whether an appellant should remain at liberty, a precautionary associational restriction may be considered a reasonable measure which will avoid, in some cases, the more drastic action of ordering preventive detention.

## II.

## WERE PRE–TRIAL CONDITIONS OF RELEASE CONTINUED?

■ The Court's somewhat imprecise language has been previously quoted. The only references to "conditions" were tied to the discussion of the bond, and there was no express or implied reference after the trial to continuation of the order prescribing conditions of release. The conditions of the bond and conditions of release are separately stated, in two distinct documents.

There was testimony at the hearing that Ragusa has continued to make weekly reports to his Pretrial Service Officer as required by the conditions of release but not by his bond. This might well indicate that Ragusa believed the conditions of release were a continuing obligation. However, the Pretrial Service Officer testified that he had instructed Ragusa to make the reports, and one cannot find an unmistakable indication that Ragusa read into my comments a restriction that was unspoken.

Ragusa's counsel, in May, 1981, sought permission for him to travel to Fort Leonard Wood. This was required by the travel limitation of his conditions of release but was not required by the restriction of the bond that Ragusa not leave the Western District of Missouri. The Court takes judicial notice that the military facility in Pulaski County is outside the counties listed in the conditions of release but is within the district. Thus there was a second arguable acknowledgment of a practical understanding that the conditions of release were intended to continue pending appeal. But Mr. Humpage, Ragusa's counsel at the time of that application, was not present in Court at the end of trial or at sentencing. He could not, therefore, have noted the exact language used by the Court, and apparently merely assumed that the condi-

tions of release were reimposed pending appeal.

The Court received on August 3, 1981, a post-hearing filing on behalf of defendant Ragusa in which, for the first time, argument was seriously presented that there was fatal ambiguity in my statements at sentencing. Law was cited to the effect that contempt will not lie unless a clear and decisive order has been made which contains no doubt about what it requires to be done. *NLRB v. Deena Artware, Inc.*, 261 F.2d 503, 509 (6th Cir. 1958), rev'd. on other grounds, 361 U.S. 398, 80 S.Ct. 441, 4 L.Ed.2d 400. Lack of precision as to what an order may require is a bar to a contempt conviction. *United States v. Maidman*, 340 F.Supp. 395, 400 (S.D.N.Y.1971); *Finney v. Arkansas Board of Correction*, 505 F.2d 194, 213 (8th Cir. 1974). See *United States v. DiMauro*, 441 F.2d 428, 439–440 (8th Cir. 1971), in which the court set aside a conviction of contempt as to a defendant who was charged with failing to comply with an order that the district judge had directed be prepared, but that was never entered. Judicial intention is thus no substitute for judicial expression.

Assuming that trial counsel, Mr. Eisenbrandt, would testify in accordance with his statements to Mr. Beaird (current counsel for Ragusa), statements of his subjective intention would be no more controlling than my own statement of intention. Counsel's specific reference to "the same bond," as to amount and "conditions," fairly refers to bond conditions, and not to the separate conditions of release. Mr. Eisenbrandt thus made the same reference as the Court made at the end of the trial.

It must be concluded that the Court's intentions orally stated at the time of sentencing were not adequately "clear and decisive," so as to create "no doubt about what it requires to be done." *Deena Artware*, 261 F.2d at 509. The contempt proceeding must be and is hereby DISMISSED.[3]

### III.

## REIMPOSITION OF CONDITIONS OF RELEASE

The Court concludes it is appropriate to act expeditiously in reimposing the conditions of release that were in effect prior to trial. The gap in formally imposed conditions was entirely inadvertent. The intention at sentencing was to maintain the pretrial status quo, but the Court failed to note that two sets of restrictions were properly in question. The Court thus failed to mention continuation of Chief Magistrate Hamilton's order specifying methods and conditions of release, dated April 29, 1980. It is therefore ORDERED that defendant Ragusa shall henceforth, subject to the further orders of this Court or of the Court of Appeals, comply with the conditions of release set forth in the aforesaid order of April 29, 1980. It is further ORDERED that reinstatement of the conditions of release shall be effective nunc pro tunc, on January 5, 1981, at a time when this Court had primary jurisdiction over the matter, without prejudice to defendant for his conduct prior to the date of this order.[4]

---

**3.** For what it may be worth, the Court would conclude, from the evidence adduced, that defendant Ragusa knowingly associated with felons, on the days set forth in the government's presentation. Such associations do not bode well for the ultimate sentencing decision of the Court, if the "attempted arson" conviction is affirmed. Adverse inferences about defendant's way of life will be strengthened if defendant fails to present a solid record of legitimate income-producing activity during the period of the appeal. As was indicated at sentencing, the Court views this period as an opportunity for defendant to show that he can perform as a law-abiding member of society, earning a legitimate income.

**4.** The Court's authority to enter this order nunc pro tunc may be questioned; if so, an application to the Court of Appeals for modification of the conditions of release may be made. It is believed, however, that jurisdiction to enter this order exists, despite the appeal, because this ruling will not interfere with "those aspects of the cause involved in the appeal." *United States v. Hitchmon*, 587 F.2d 1357, 1359 (5th Cir. 1979), vac. on other grounds, 602 F.2d 689. More troubling is the pertinence of the general rule that an order nunc pro tunc cannot operate to take the place of orders intended to

be made but omitted. Id. 1360. Recent rulings suggest that there is inherent power to enter such orders to meet practical needs, as long as the rights of the parties are not unfairly affected. See, e. g., *Perry v. Ralston*, 635 F.2d 740, 743 (8th Cir. 1980); *United States v. Streets, Alleys & Public Ways*, 531 F.2d 882, 884 n. 1 (8th Cir. 1976). The limiting principle was founded on prejudice to the parties. *Hitchmon*, l.c. 1360. This is avoided in the present order. Moreover, the present order may be justified by characterizing it as a correction of language inadvertently used. *Eaton v. Weaver Mfg. Co.*, 582 F.2d 1250, 1254 n. 6 (10th Cir. 1978); *Wax v. Motley*, 510 F.2d 318, 321 (2d Cir. 1975).