716 A.2d 1188 (1998)
315 N.J. Super. 122
TOWNSHIP OF MANCHESTER DEPARTMENT OF UTILITIES, Plaintiff-Appellant,
v.
EVEN RAY CO., INC., Defendant-Respondent.
Superior Court of New Jersey, Appellate Division.
Submitted August 25, 1998.
Decided August 31, 1998.
*1190 Starkey, Kelly, Blaney & White, Toms River, for plaintiff-appellant (Scott W. Kenneally, Brielle, on the brief).
Thomas L. Bace, Toms River, for defendant-respondent.
Before Judges SHEBELL and KEEFE.
*1189 The opinion of the court was delivered by SHEBELL, P.J.A.D.
On January 25, 1996, plaintiff/appellant Township of Manchester Department of Utilities (Manchester) filed a Complaint in Condemnation in the Law Division, Ocean County, seeking to acquire, by Eminent Domain, from defendant, Even Ray Company, Inc. (Even Ray), 46,481 feet of underground sewer pipes and sewer appurtenances along with a 458,310 square foot sewer easement in lands located in a senior residential community known as Cedar Glen Lakes in Manchester Township. A Declaration of Taking was filed by plaintiff and recorded in Deed Book 5347, page 119 of the Ocean County Clerk's office. On February 6, 1996, the Assignment Judge filed an Order to Show Cause ordering defendant to show cause why judgment should not be rendered appointing three Commissioners to fix the just compensation to be paid for the taking of the property.
On May 10, 1996, the Assignment Judge appointed the commissioners. On October 24, 1996, a condemnation hearing was held. The commissioners submitted a report dated December 6, 1996, awarding defendant $25,000 for the easement and $1.00 for the sewer collection system.
On December 30, 1996, defendant filed an appeal in the Law Division from that portion of the Commissioner's Report which awarded defendant $1.00 for the sewer collection system. On January 3, 1997, plaintiff filed a cross-appeal from that portion of the Report which awarded defendant $25,000 for the easement.
Plaintiff filed a motion for summary judgment returnable on May 30, 1997, requesting that an order be entered fixing compensation at $1.00 for the easement and sewer collection system. Defendant filed a cross motion for partial summary judgment requesting that an order be entered in the amount of $25,000 for the taking of the easement. On May 30, 1997, both motions for summary judgment were denied.
On July 7, 1997, the matter was tried by the Honorable Rosalie B. Cooper, J.S.C., without a jury. Judgment was entered on July 28, 1997, in favor of defendant for $117,600.00 *1191 representing the just compensation to be paid inclusive of $25,000 representing just compensation for the easement.
On October 22, 1997, plaintiff filed a notice of appeal from the May 30, 1997 order denying summary judgment and the July 28, 1997, order for judgment.
Cedar Glen Lakes is an adult residential cooperative, constructed in three sections, commencing in 1970. The streets and ways, together with their improvements, were and still are privately owned. They were conveyed by Even Ray to Cedar Glen Lakes, Inc. as part of the procedure for turnover by the developer. When development began, Even Ray obtained approvals from Manchester for the project. A septic system was to serve the sewerage needs of the residents at that time. At the time, Manchester did not have a utilities authority. Even Ray, however, was nonetheless required to install a dry collection system in order to hook up to any sewerage treatment facility to be developed in the future.
Even Ray retained Sambol Construction Company, an Ocean County contractor, to design the system and install it. The construction was done in accordance with the standards of the industry as they existed at that time. The design cost and expense of installation were borne by Even Ray, in addition to the cost of the septic system.
After the installation of the system, Manchester created the Manchester Municipal Utilities Authority (MUA), which entered into negotiations with Even Ray to connect the system to the treatment system that the MUA was to operate. These negotiations were not completed.
When Even Ray turned the development over to the Cedar Glen Lakes Association, it reserved the rights in the sewer collection system and the easements in the streets in which they were located. These ownership rights were confirmed in a quit-claim deed granted by Cedar Glen Lakes, Inc., to Even Ray dated July 20, 1994. As a result of the deed and reservation of rights, Even Ray retained an easement in the lands running through the private streets of Cedar Glen Lakes, extending approximately nine miles, together with the sewer collection system.
After the residents of Cedar Glen Lakes began experiencing frequent septic failure, they requested that Manchester complete construction of the necessary sewer lines and connect the lines to a sewage treatment facility. In order to accomplish these objectives, Manchester proceeded with the within condemnation action. The sewer lines have now been made operable by Manchester after substantial repairs and improvements. The system is in use and is connected to the system operated by the Ocean County Utilities Authority by way of a four mile sewer line installed as part of this project, known as the Crestwood Interceptor line.
Manchester has taken the position that the sewer lines were not operational at the time of taking and could not be legally operated by any party other than Manchester. It, therefore, requested that an award of $1.00 be entered for the taking of the sewer lines and the related easement, despite its own expert's appraisal of the value of Even Ray's interest in the easement at $25,000. Plaintiff's counsel argued at summary judgment, as follows:
[W]e actually appealed from our own expert's opinion of $25,000. And our reason, our expert in his report states that his determination is based without reference to any legal rights to operate the easement. Even Ray cannot operate a sewer franchise without township permission and they don't have a sewer franchise. And no one would purchase a sewer franchise within the township because the township already operates the only sewer franchise.
At trial held on July 7, 1997, Manchester called as an expert James Stuart, a real estate appraiser from Stuart Appraisal Company. Stuart had prepared an appraisal report of the subject easement and sewer line dated September 1995 for Manchester. In valuing the easement, Stuart applied the market approach, which is a direct sales comparison. By comparing three other sales to the subject property, Stuart found that the value of the property if it were in fee simple was $10,000 to $12,000 per acre. Since the area of the easement is 10.5 acres, *1192 the value of the property subject to the easement would be $126,000. However, Stuart valued the easement only at 20 percent, since it was not a complete taking. Therefore, he valued the easement at $25,000.
Stuart utilized the cost approach in valuing the sewer collection line. Under the cost approach, Stuart estimated the replacement cost of the improvements utilizing the base cost of the system supplied by Marshall Evaluation Service, a nationally recognized cost service which provides estimates of the reproduction or replacement costs of improvements, such as sewer lines, office buildings, or houses. The base cost was then adjusted by a cost multiplier and a local multiplier. Finally, he included an entrepreneurial profit of ten percent. He concluded that the replacement cost of the sewer system was $1,030,034.
Stuart then used a report from Birdsall Engineering as to the cost of repairing the existing sewer line. From this report, he determined that $602,000 of rehabilitation was necessary. Birdsall indicated that it would take $15,700 per year in additional sewage treatment costs from water infiltration into the system. The $15,700 represented a functional obsolescence to the sewer system and was capitalized at ten percent for a total of $157,000 in functional obsolescence attributable to the system. Besides the repair costs, Stuart also deducted the depreciated value of the remainder of the system that would not be replaced. The depreciation rate according to the Marshall Evaluation Service was 68 percent. Stuart calculated this amount as $286,983. He concluded:
The bottom line is that I end up with a negative value because if I take into consideration the physical depreciation of the remainder in the ground at the rate suggested, if I apply the $602,000 that it cost to fix it now and the $157,000 functional, it actually, I end up with a negative of $15,900.
However, on cross-examination, Stuart conceded that even though he initially predicted that the life expectancy would be four or five years, the repairs that would be made on the system would extend the life expectancy of the system to 20 years. Stuart noted that he used a chronological age rather than the "effective age" as called for in the Marshall Valuation Service Guide.
After plaintiff rested its case, defendant moved, pursuant to Rule 4:40, for a directed verdict for just compensation on the easement in the amount of $25,000, based upon plaintiff's expert's opinion. Plaintiff opposed the motion by arguing that because there is no authority in the state for anyone to use these easements the market value is zero. The trial judge granted defendant's motion for a directed verdict and held:
Well the market value is not, obviously not zero because in order to get to the Utility Authority in order to get to the pipes that are laid underneath would have to utilize the easement itself. So the easement has a value, Counsel, because they have to use it to get to the pipes which they control.
There is no way you can say it's not there, it's value because they own that strip of land and they can get into that strip of land whenever they want to in order to fix the pipes. Therefore, it has to have value.
* * * *
And I'm, therefore, finding under the circumstances in this case the easement does have a value of $25,000, the value being the right of the Sewerage Authority to come upon that road, come upon that easement and do what they have to do with respect to the pipes running underneath it. So I'm granting that motion and we'll go forward on the sewer.
Defendant introduced the testimony of Richard Hall, a State-certified general real estate appraiser and consultant, as an expert. Hall testified concerning the value of the sewer line. He utilized the cost approach to value the line, and estimated the current replacement cost at $1,030,034, as a typical average-type cost for this facility. Hall also relied upon the Birdsall Engineering report for the cost to cure of $602,000. Since Birdsall Engineering bonded the sewer line for twenty years, Hall concluded that it would last that long. Hall also agreed that the functional obsolescence depreciation factor *1193 that Stuart utilized, that being the sum of $157,000, was also appropriate.
Hall disagreed with Stuart's use of a 68 percent depreciation for the remaining value of the sewer line after the cost of cure, instead, he used a factor of 10 percent. The 10 percent factor was based on a minimum of 20 to 21 years economic life after the cure has been completed. Hall concluded that the system had a value of $168,000.
The trial judge held that the sewer line was worth $117,600. Plaintiff appealed both the denial of summary judgment and the trial court's judgment. However, in its brief, plaintiff only addresses the trial court's judgment and, therefore, we address only that issue.
The first issue is whether the trial court erred in finding that the property interests taken have market value to any party other than plaintiff. Plaintiff contends that the easement and the sewer system have no value to anyone besides Manchester. Therefore, the trial court should have found that defendant was entitled to no compensation for the taking of the interests.
In a non-jury case, the findings of the trial court should not be disturbed unless "they are so wholly insupportable as to result in a denial of justice." Rova Farms Resort v. Investors Ins. Co., 65 N.J. 474, 484, 323 A.2d 495 (1974) (quoting Greenfield v. Dusseault, 60 N.J.Super. 436, 444, 159 A.2d 433 (App.Div.1960), aff'd o.b., 33 N.J. 78, 161 A.2d 475 (1960)). "Findings by the trial judge are considered binding on appeal when supported by adequate, substantial and credible evidence." Ibid. Only when factual findings and legal conclusions are so manifestly unsupported by competent, relevant, and reasonably credible evidence should the appellate court disturb the trial court's findings. Ibid.
The Fifth Amendment to the United States Constitution provides that property may not be taken without just compensation. Likewise, Article I, Paragraph 20 of the New Jersey Constitution provides that "[p]rivate property shall not be taken for public use without just compensation. Individuals or private corporations shall not be authorized to take private property for public use without just compensation first made to the owners."
N.J.S.A. 40A:12-4(a) provides:
Any county or municipality may acquire:
(a) Any real property, capital improvement, personal property or any interest or estate whatsoever therein, including easements, water, water power, or water rights, either within or without the county or municipality, except that no such property belonging to the State or any of its agencies, a county or any municipality shall be acquired without its express consent....
The term "acquire" is defined to include acquisition by condemnation. N.J.S.A. 40A:12-2. Property is defined under the eminent domain statute as "land, or any interest in land...." N.J.S.A. 20:3-2. An easement constitutes an interest in land, and the owner must be compensated for the value of the easement taken from him or her. State v. Orenstein, 124 N.J.Super. 295, 302, 306 A.2d 479 (App.Div.1973) (quoting Jahr, Eminent Domain, Valuation and Procedure, § 160 at 251 (1953)).
Plaintiff argues that the judgment is unsupported by any evidence that the property interests taken have any value to any party other than plaintiff. An owner's indemnity is ordinarily measured by the market value of the property. United States v. Miller, 317 U.S. 369, 374, 63 S.Ct. 276, 279, 87 L.Ed. 336, 342 (1942). "[M]arket value is what a willing buyer would pay in cash to a willing seller." Ibid. However, it is recognized that other methods may be utilized if the property interest does not have a market value. Ibid. The United States Supreme Court noted:
Where, for any reason, property has no market, resort must be had to other data to ascertain its value; and, even in the ordinary case, assessment of market value involves the use of assumptions, which make it unlikely that the appraisal will reflect true value with nicety.
[Miller, supra, 317 U.S. at 374, 63 S.Ct. at 279, 87 L.Ed. at 342.]
*1194 Plaintiff argues that the easement and the sewer line were valueless, since they could not be used by any party other than plaintiff without a sewer franchise. See In the Matter of South Lakewood Water Co., 61 N.J. 230, 294 A.2d 13 (1972). It is plaintiff's position that no other party would place any value on these nominal property interests, since they could not operate a sewer. Defendant responds that an individual owner of land would be compensated if the land was taken by a utilities authority to construct a sewage treatment plant, by a Board of Education to build a school, or by the Department of Transportation to construct a highway, even though that private landowner could not use his land to build any of those structures.
Here, it is not true that the easement has no use to anyone besides Manchester in its special use of developing a sewer system. The easement would have value to any person or entity that undertook to provide sewer services to the community. The fact that governmental approval and a franchise would be required is of no moment on this issue. The easement runs through the privately owned streets of Cedar Glen Lakes, extending approximately nine miles. In gaining access to the sewer line for repairs and service, any sewer service provider would interfere with the private use of nine miles of private roadway. Thus, the right to interfere with the owner's use of the property by reason of the easement has a value to any sewer operator and that right may not be taken without just compensation.
Plaintiff's expert correctly applied the conventional method of valuing easements in such a situation. He took the market value of the property in fee simple and deducted the value of the property after the easement was imposed. Thus, the trial judge did not err in adopting the plaintiff's expert's valuation of the easement.
We turn next to defendant's contention that it is entitled to compensation for the value of the sewer line. This raises the issue of whether a sewer line is compensable property. The Eminent Domain Act defines property as:
(1) any building, structure or other improvement imbedded or affixed to a land, and any article so affixed or attached to such building, structure or improvement as to be an essential and integral part thereof; (2) any article affixed or attached to such property in such manner that it cannot be removed without material injury to itself or to the property; (3) any article so designed, constructed, or specially adapted to the purpose for which such property is used that (a) it is an essential accessory or part of such property; (b) it is not capable of use elsewhere; and (c) would lose substantially all its value if removed from such property.

[N.J.S.A. 20:3-2(d).]
The private sewer line in this case is attached to the realty in a manner which makes it incapable of removal without material injury to the line. Thus, it qualifies as compensable property under the Eminent Domain Act.
This finding is consistent with treatises and the courts of other jurisdictions that have addressed this issue. Private sewers in a private street are considered private property. 2 Nichols, Eminent Domain, Section 5.49(4) (1990). A private sewer line cannot be taken by a municipality without compensation to the private owners. 11 McQuillin, Municipal Corporations, Section 31.09 (1991). Private sewer lines are viewed as property within the meaning of the constitutional provisions relating to the exercise of eminent domain. Ibid.; see e.g. Town of Sheridan v. Valley Sanitation Dist., 137 Colo. 315, 324 P.2d 1038, 1042-43 (1958) (invalidating as a taking without just compensation an ordinance providing that no permit to construct a private sewer shall be granted except upon the express condition that all right, title and interest in the sewer shall vest in the Town); City of Albany v. James S. Rivers, Inc., 217 Ga. 674, 124 S.E.2d 388, 389 (1962) (granting injunction enjoining township from making connections to private sewer without providing just compensation); McIntosh v. City of Joplin, 486 S.W.2d 287, 289 (Mo.Ct.Ap.1972) (noting that a city may not appropriate a private sewer by passing an ordinance or by merely connecting onto it *1195 without the owner's permission without providing just compensation); City of Omaha v. Matthews, 197 Neb. 323, 248 N.W.2d 761, 762-63 (1977) (holding that a sewer connections running from private property to city sewer main were privately owned and could not be appropriated or destroyed without compensation).
It is generally acknowledged that it is extremely difficult to determine the market value of sewers. United States v. 50 Acres of Land, 706 F.2d 1356, 1359 (5th Cir.1983), cert. denied, 465 U.S. 1022, 104 S.Ct. 1274, 79 L.Ed.2d 679 (1984). The rationale behind the use of fair market value as a valuation method is that it strikes a fair balance between the public's need and the claimant's loss upon condemnation of property for a public purpose. Id. at 1359 (quoting United States v. 564.54 Acres of Land, More or Less, Situated in Monroe and Pike Counties, Pennsylvania, (Lutheran Synod), 441 U.S. 506, 99 S.Ct. 1854, 60 L.Ed.2d 435 (1979)). However, in cases such as this, "just compensation" and "fair market value" are not always synonymous. Id. at 1359.
In cases involving the taking of a public sewer, federal courts developed an alternative means of valuation to "fair market value." As derived from Chief Justice Taft's opinion in Brown v. United States, 263 U.S. 78, 44 S.Ct. 92, 68 L.Ed. 171 (1923), federal courts have applied the "substitute facilities doctrine." 50 Acres of Land, supra, 706 F.2d at 1359. This doctrine provides that the method of compensation in cases involving the condemnation of such facilities for which fair market value cannot accurately be determined is the cost of substitute facilities, where such substitute facilities are necessary. Ibid. If no substitute facility is necessary, fair market value will be the standard for compensation, when it can be ascertained. Ibid. This method places the municipality in the same "position pecuniarily as if [its] property had not been taken." Ibid. Thus, the federal courts have recognized that "fair market value is not and cannot be the single, inflexible measure of just compensation." Ibid.
Likewise, the New Jersey Supreme Court adopted the substitute facilities doctrine in State v. Township of South Hackensack, 65 N.J. 377, 322 A.2d 818 (1974). The Court noted:
There is no precise and inflexible rule for the assessment of just compensation. The Constitution does not contain any fixed standard of fairness by which it must be measured. Courts have been careful not to reduce the concept to a formula. The effort has been to find working rules and practical standards that will accomplish substantial justice such as, but not limited to, market value.
[Id. at 384, 322 A.2d 818 (quoting Jersey City Redevelopment Agency v. Kugler, 58 N.J. 374, 383-84, 277 A.2d 873 (1971)).]
Thus, it is apparent that market value should not be the sole means of valuation in eminent domain cases. When the comparable sales method of valuation is unavailable, it is appropriate to resort to replacement cost. State v. Willett Holding Co., 62 N.J. 59, 62, 298 A.2d 69 (1972); Jersey City Redevelopment Agency v. Clean-O-Mat Corp., 289 N.J.Super. 381, 398, 673 A.2d 1360 (App.Div.), certif. denied, 147 N.J. 262, 686 A.2d 763 (1996).
Merely because there may be no market for sewer lines does not mean that defendant should receive no compensation for the taking of 46,000 feet of sewer pipe, 112 manholes, and all related connections. In this case, the experts from both sides agreed that the best means for valuing the sewer line was the cost method. The use of the cost method is appropriate in this case, and we, therefore, affirm the use of that method by the trial judge.
Plaintiff has not directly challenged the trial judge's adoption of defendant's expert's opinion on the value of the sewer line rather than that of plaintiff's expert. The Court rejected plaintiff's expert's use of a life expectancy of five years to calculate a 68 per cent depreciation on the remaining life of the system. The judge's decision is supported by plaintiff's expert's concession that he ignored indicators provided in the Birdsall report establishing a life expectancy of approximately twenty years after the repairs by the *1196 municipality. Thus, the trial court's findings were supported by competent, relevant and reasonably credible evidence and will not be disturbed.
We reject plaintiff's argument that the trial judge failed to make sufficient findings of fact and conclusions of law to justify the award. R. 1:7-4. In granting defendant's motion for a directed verdict on the issue of the value of the easement, the trial judge made detailed findings of fact and conclusions of law. Judge Cooper provided her conclusions regarding the sewer line, as follows:
The court is looking in this case at two different appraisers; both of whom agree on certain numbers and both of whom disagree on depreciation over a period of life. I don't think that you can use the Birdsall report for one thing and not use it for the other thing. I think that does not make [sense], that is when the court is sitting as a jury in this case. Common sense says to you you want to pick and choose that will be advantageous to you and then not use that which would be disadvantageous to you.
His report, as far as I can see, indicates a 20-year life expectancy of the whole system. And I think that that is the, that is what this court would use in coming to its conclusion. The big problem is the depreciation rate. Mr. Stuart has used 68 percent on the old pipe and nothing for the new pipe and Mr. Hall has used an overall depreciation rate of ten percent. If you both used the same methods it would be much easier for the court to make a decision in this case I can tell you both right now. So what I'm going to do is think about it and then I'll come back to you after lunch, all right.
She then decided to adopt the opinion of defendant's expert.
The judgment on appeal is affirmed.